# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| DWAYNE ANDREWS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No: 4:13CV2045 HEA |
| | ) |
| KEITH SCHAFER, et al., | ) |
| | ) |
| Defendants. | ) |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion for Summary judgment, [Doc. No.25]. The parties respectively oppose the others' motions. For the reasons set forth below, the Court grants defendants' Motion and denies Plaintiff's Motion.

### Facts and Background

Defendant has, in accordance with the Court's Local Rules, submitted a Statement of Uncontroverted Material Facts. Plaintiff has filed a response to the Statement, admitting most of the facts, adding some facts thereto and submitting his own additional facts, to which Defendant has responded. From the parties' submissions, the following sets out the facts herein.

Defendant Keith Schafer is the former Director of the Department of Mental Health. Defendant Mark Stringer is the current Director of the Department of

Mental Health. Defendant Felix Vincenz is the Chief Operating Officer at the St. Louis Psychiatric and Rehabilitation Center. Defendant Roy Wilson is the Medical Director at St. Louis Psychiatric and Rehabilitation Center and the Missouri Psychiatric Center. Defendant Laurent Javois is the Regional Executive Officer for the Southeastern Region of Missouri for the Department of Mental Health. Defendant H.A. Mannich is a former employee of the Missouri Department of Mental Health. Defendant Sylvia Adams is a former employee of the Missouri Department of Mental Health.

In 2003, Plaintiff Dwayne Andrews was charged in the City of St. Louis, MO, with the following: Count I – Assault of a Law Officer in the first degree, a class A felony; Count II – Armed Criminal Action – an unclassified felony; Count III – Assault of a Law Officer in the first degree, a class A felony.[1]

The Circuit Court of the City of St. Louis granted Plaintiff's motion for appointment of a psychiatrist on July 14, 2004. Plaintiff was referred to the St. Louis Psychiatric Rehabilitation Center for pretrial examination and evaluation. Pursuant to this order, Plaintiff was evaluated by Dr. Michael Armour.

In Dr. Armour's report, dated May 16, 2005, he found that Plaintiff was suffering from the active symptoms of PTSD at the time of the alleged offenses.

---

[1] Defendant states that Plaintiff was also charged in a Count IV – Armed Criminal Action – an unclassified felony. Plaintiff disputes this arguing that the record shows he was only charged with one count of armed criminal action.

Plaintiff also includes that Dr. Armour recommended that Plaintiff did not need inpatient psychiatric hospitalization pending or during the proceedings.

On June 1, 2005, Plaintiff and the prosecutor filed a Stipulation to Defense of Not Guilty by Reason of Insanity (NGRI) pursuant to § 552.030, RSMo. The plea was accepted by the Court, which entered its Judgment and Order of Commitment to the Custody of the Director of Mo. DMH. The Court specifically found: Whereupon, the defendant [Plaintiff herein] having filed a written notice that he has no other defense and the State having accepted the defense of mental disease or defect excluding responsibility, and the Court having duly considered the matter and evidence presented and the report filed herein, it is hereby ordered that the defense of mental disease or defect excluding responsibility be sustained and that the defendant stand acquitted of the charge herein on the ground of mental disease or defect excluding responsibility. It is therefore ordered by the Court that the defendant be committed to the custody of the Director of the Department of Mental Health and be kept for care and treatment in a secure facility pursuant to 552.040.4. The defendant is not to be released therefrom except on order of this Court upon a determination through the procedures provided in the Section 552.040 RSMo (2000) and unless it is determined by the Court that he does not have and in the reasonable future is not likely to have a mental disease or defect rendering him dangerous to the safety of himself of others or unable to conform his

conduct to the requirements of law. Plaintiff was sent to Fulton State Hospital and placed in the Biggs Center, a secure facility. Plaintiff was transferred from Biggs to the Guhleman Forensic Center at FSH on October 4, 2005. Guhleman is less restrictive than Biggs.

In September 2007, Plaintiff was transferred to the St. Louis Psychiatric and Rehabilitation Center. Between October 24, 2005 and January 6, 2006, Plaintiff filed three pro se motions for conditional release. A public defender was appointed to represent Plaintiff. An amended application for conditional release was filed on September 12, 2006.

On December 7, 2006, Plaintiff filed a pro se Motion for Vacation, Set Aside or Dismissal of Commitment Order. On December 7, 2006, Plaintiff appeared in person and by counsel in the Circuit Court of the City of St. Louis. The court granted Plaintiff's request for a private mental health evaluation. On December 20, 2006, a hearing was held on Plaintiff's pro se Motion for Vacation, Set Aside or Dismissal of Commitment Order. Plaintiff again appeared in person and by counsel. The motion was taken under submission. On April 12, 2007, the Court issued its Judgment and Order denying Plaintiff's motion and correcting the judgment committing him to the Department of Mental Health.

On September 9, 2010, Plaintiff was given a Conditional Release Evaluation by Dr. Jeffrey Kline. Dr. Kline found that Plaintiff suffers from the mental disease

of PTSD as defined by Chapter 552, RSMo, "but his symptoms are in Full Remission and have been so for several years." On December 21, 2010, at a hearing on cross applications for conditional release, Defendants and DMH supported the petition. The only objections were filed by the St. Louis County Prosecutor and the St. Louis City Prosecutor. The Court ultimately denied the cross applications for conditional release.

On June 5, 2012, the Circuit Court of the City of St. Louis took up Plaintiff's Application for Conditional Release as well as the Cross Application for Conditional Release filed by SLPRC. The Court ruled in favor of conditional release without discharge, which meant that one of the conditions of his release was that he continues to reside at SLPRC. The Order was set to terminate on October 5, 2012.

On or about August 29, 2012, Defendants filed an Application to Amend the Conditional Release without Discharge to a Conditional Release with Discharge for a period of one year. This Application was granted on September 24, 2012.

On September 5, 2013, Defendants filed their Application to Amend and Extend Plaintiff's Conditional Release for an additional year. This Application was granted on October 8, 2013.

In the index case, titled State of Missouri v. Dwayne Andrews, no. 031-2793, the Judgment and Order of Commitment dated June 1, 2005 entered in the

Circuit Court of the City of St. Louis, State of Missouri by the Honorable Edward Sweeney, Circuit judge, in the second paragraph provided:

> On or about September 14, 2004, defendant was evaluated pursuant to Chapter 552 RSMo (2000) by Michael T. Armour, Ph.D., of the Saint Louis Psychiatric Rehabilitation Center. Dr. Armour's report (dated May 16, 2005) indicates that the defendant suffers from Posttraumatic Stress Disorder and, in Dr. Armour's opinion, was incapable of appreciating the nature, quality, or wrongfulness of his conduct or conforming his conduct to the requirements of the law at the time of the incident which led to the pending criminal charges.

In the index case the Judgment and Order of Commitment dated June 1, 2005 entered by Judge Sweeney also provided:

> It is hereby ordered that the defense of mental disease or defect excluding responsibility be sustained and that the defendant stand acquitted of the charge herein on the ground of mental disease or defect excluding responsibility.
>
> * * * * *
>
> It is therefore ordered by the Court that the defendant be committed to the custody of the Director of the Department of Mental Health and be kept for care and treatment in a secure facility pursuant to 552.040. The defendant is not to be released therefrom except on order of this Court upon a determination through the procedures provided in the Section 552.040 RSMo (2000) and unless it is determined by the Court that he does not have and in the reasonable future is not likely to have, a mental disease or defect rendering him dangerous to the safety of himself or others or unable to conform his conduct to the requirements of law.

Prior to the Order of Commitment, Mr. Andrews was evaluated by Dr. Michael Armour of the St. Louis Psychiatric Rehabilitation Center on 9-14-04. At

the time, Mr. Andrews had never "received any psychiatric or psychological treatment on either an inpatient or outpatient basis." Dr. Armour determined that Mr. Andrews was competent to proceed and assist in defending the criminal case. Dr. Armour further opined that "it is the examiner's recommendation that Mr. Andrews does not need inpatient psychiatric hospitalization pending or during further proceedings."

Dr. Armour prepared a second report regarding Mr. Andrews on May 16, 2005. Therein Dr. Armour stated:

> [I]t is the examiner's opinion to a reasonable degree professional certainty that the time of the alleged offense, Mr. Andrews ·was suffering from the active symptoms of Posttraumatic Stress Disorder and that because of these active symptoms of Posttraumatic Stress Disorder. Mr. Andrews was not able to know and appreciate the nature, quality or wrongfulness of his conduct. Mr. Andrews during the time of the alleged offense was suffering from active symptoms of Posttraumatic Stress Disorder.
>
> \* \* \* \* \* \*
>
> It is the examiner's recommendation that Mr. Andrews will not need inpatient psychiatric hospitalization pending or during further proceedings.

Dwayne Andrews was incarcerated from the date of the alleged offense on 8-9-03 to the date of the Order and Commitment dated June 1, 2005, a period of almost 22 months.

On June 21, 2005, upon Plaintiff's commitment to the Missouri Department of Mental Health from the City of St. Louis jail, he was admitted to Fulton State Hospital Biggs Forensic Center, a maximum security forensic treatment facility.

At the time of the Order and Commitment of June 1, 2005 and the transfer to the state mental hospital on June 21, 2005, the Court and the defendants herein had only one opinion concerning the mental health of defendant which stated: "It is the examiner's [Dr. Armour] recommendation that Mr. Andrews will not need inpatient psychiatric hospitalization pending or during further proceedings."

On the date of his admission (6-21-05), Mr. Andrews was evaluated and given a Psychiatric Assessment by Alicia Thompson, M.D. This included a review of his past psychiatric history which was noted as follows: PAST PSYCHIATRIC HISTORY. In reviewing Mr. Andrews' records, there is no reported history of psychiatric or psychological treatment. Additionally, he has not been treated with any pharmacotherapy on an inpatient or outpatient basis. Dr. Thompsons 6-21-05 assessment noted that Mr. Andrews "has a significant history of alcohol and substance abuse and does not have documented inpatient or outpatient psychiatric care for his Posttraumatic Stress Disorder." Mr. Andrews was provided with a primary diagnosis: POST TRAUMATIC STRESS DISORDER, CHRONIC, PROVISIONAL.

Three months later on September 18, 2005 Mr. Andrews was given a "90 day" psychiatric assessment by Veera Reddy, M.D. Dr. Reddy stated that "over the past three months, Mr. Andrews has remained free of any aggressive behaviors and was also able to gradually be promoted to the highest privilege level, which is

Level IV. Dr. Reddy also noted that "Mr. Andrews is currently on no psychotropic medications. Dr. Reddy recommended that "Mr. Andrews be transferred to a less restrictive treatment environment." Her recommendation was "based on the lack of any further aggressive or assaultive behaviors since admission and since the index crime, being cooperative with treatment and gaining insight into his illness and improving his judgment."

Plaintiff was provided with an Annual Psychiatric Assessment by Kavita Pendurthi, M.D. on Jun 12, 2006. Dr. Pendurthi noted that Mr. Andrews remained free of "any psychotropic medications". Dr. Pendurthi commented that Mr. Andrews requested "individual therapy to deal with his reported Post Traumatic Stress disorder" but was refused any treatment. Dr. Pendurthi assessed Mr. Andrews as being frustrated by the fact that he was being institutionalized for a psychiatric disorder, which had a symptomatic response only once in Mr. Andrews lifetime, but was not being treated or medicated for the disorder.

Dr. Pendurthi further noted that Mr. Andrews continued to "express his strong conviction of his belief that he has met the criteria for transfer and discharge." Dr. Pendurthi commented that Mr. Andrews had no symptoms of post-traumatic stress disorder since 2003.

On June 19, 2007, Mr. Andrews had his Annual Psychiatric Assessment by Maggie Ackerman, Psychiatric Nurse Practitioner. Ms. Ackerman confirmed that

Mr. Andrews "is not on any psychotropic medications." Ms. Ackerman noted that he "has not received any intolerable infractions or of seclusion or restraint". She found Mr. Andrews to be "a cooperative and pleasant gentleman". Further she stated that Mr. Andrews does not "endorse any symptoms of Posttraumatic Stress Disorder."

On September 5, 2007, Mr. Andrews was transferred from Fulton State Hospital to St. Louis Psychiatric Rehabilitation Center within the Missouri Department of Mental Health "due to a new ward opening" at St. Louis Psych.

Plaintiff participated in a psychological assessment in January 2006. He was administered the Millon Clinical Multiaxial Inventory-Third Edition, the Minnesota Multiphasic Personality Inventory- Second Edition, and the Clinician Administered Post Traumatic Stress Disorder Scale for DSM-IV. Plaintiff was referred for the assessment in order to help clarify his current psychiatric symptoms and to assist with both treatment planning and appropriate program placement. The results of the assessment were interpreted by a Masters Level Psychology Intern under the supervision of a Ph.D. prepared, licensed staff psychologist. The results were considered valid. • "No dangerous or illegal acts have been performed by Mr. Andrews since the index offense, based on his records" • "He reported that he is confident that he can abstain from alcohol and drugs and stated that he will go to AA or NA."

The Lucinda Baker independent medical evaluation report on Mr. Andrews' institutionalized behavior contained the following:

> Mr. Andrews' behavior while hospitalized has been remarkable for its unremarkable course. Based on his Integrated Risk Assessment, Mr. Andrews has earned no serious behavior infractions since his admission to Biggs Forensic Center on Jun 21, 2005.
>
> * * * *
>
> Mr. Andrews has not been prescribed medication throughout his hospital stay. No symptoms of Post-Traumatic Stress Disorder were documented as having been observed by staff throughout the Petitioner's hospital stay.
>
> * * * *
>
> [H]e has demonstrated the ability to control his behavior, specifically his aggressive or violent impulses toward others, since his admission to forensic hospitalization in June of 2005. It is worthy to note that he has achieved and maintained this degree of behavioral control in an environment which many would describe as challenging.

In the Discharge Summary written by Selbert Chernoff, M.D. from Fulton State Hospital to St. Louis Psychiatric Rehabilitation Center in September of 2007 regarding Mr. Andrews stay, Dr. Chernoff noted:

> CLINICAL COURSE Mr. Andrews was not treated with any psychotropic agents but attended various substance abuse groups and did reasonably well. CONDITION ON DISCHARGE At discharge, Mr. Andrews continued on no psychotropic medications.

18. On September 9, 2010, Plaintiff was given a Conditional Release Evaluation by Dr. Jeffrey Kline. Dr. Kline found that Plaintiff suffers from the mental disease of PTSD as defined by Chapter 552, RSMo, "but his symptoms are in Full Remission

and have been so for several years." (Exhibit D, Bates No. 1263) The report of Dr. Kline further states:

> "The available evidence does not suggest an active and ongoing pattern of symptoms of PTSD since his commitment to the Department of Mental Health. There is no documentation suggesting nightmares, flashbacks, increased startle response, or other symptoms of PTSD. With this in mind his PTSD is considered in full remission. [for 7 years, since 2003]

Most importantly for purposes of this case Dr. Kline made the following findings

> 3. Mr. Andrews is not likely to be dangerous to others while on conditional release.
>
> 4. Mr. Andrews is not now and is not likely, in the reasonable future, to commit another violent crime against another person because of his mental illness.

The independent opinion of Dr. Kline in 2010 that Mr. Andrews is not dangerous has not since been challenged since.

Plaintiff filed his original complaint in this action on October 11, 2013. An Amended Complaint was filed on January 29, 2014 after Plaintiff obtained counsel.

Rule 7-401(E) provides:

> Rule 7 - 4.01 Motions and Memoranda.
>
> (E) A memorandum in support of a motion for summary judgment shall have attached a statement of uncontroverted material facts, set forth in a separately numbered paragraph for each fact, indicating whether each fact is established by the record, and, if so, the appropriate citations. Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine issue exists. Those matters in dispute

shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts. All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.

Plaintiff did not dispute any of Defendants' material facts.

## Summary Judgment Standard

The Eighth Circuit has recently articulated the appropriate standard for consideration of motions for summary judgment, as follows:

> Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. The movant bears the initial responsibility of informing the district court of the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. Credibility determinations, the weighing of the evidence and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.

*Torgerson v. City of Rochester,* 643 F.3d 1031, 1043 (8th Cir.2011) (en banc) (internal citations and quotation marks omitted). "Although the burden of demonstrating the absence of any genuine issue of material fact rests on the

movant, a nonmovant may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." *Wingate v. Gage Cnty. Sch. Dist., No. 34,* 528 F.3d 1074, 1078–79 (8th Cir.2008) (cited case omitted). With this standard in mind, the Court accepts the following facts as true for purposes of resolving the parties' motions for summary judgment.

## Discussion

> Official immunity protects public officials from liability for alleged acts of ordinary negligence committed during the course of their official duties for the performance of discretionary acts. *Kanagawa v. State By and Through Freeman,* 685 S.W.2d 831, 835 (Mo. banc 1985). Whether an act is discretionary or ministerial depends on the "degree of reason and judgment required" to perform the act. *Id.* at 836. An act is discretionary when it requires "the exercise of reason in the adaption of means to an end, and discretion in determining how or whether an act should be done or a course pursued." *Rustici v. Weidemeyer,* 673 S.W.2d 762, 769 (Mo. banc 1984) *quoting Jackson v. Wilson,* 581 S.W.2d 39, 43 (Mo.App.1979).

*Davis v. Lambert–St. Louis Int'l Airport*, 193 S.W.3d 760, 763 (Mo.Banc.2006). "Under Missouri law, the official immunity doctrine protects public officials from liability for injuries arising out of their discretionary acts or omissions, but not from liability in claims arising from their performance of ministerial acts." *Reasonover v. St. Louis County, Mo,* 447 F.3d 569, 585 (8th Cir. 2006). Official immunity does not apply, however, to discretionary acts done in bad faith or with malice. *Id.; State ex rel. Twiehaus v. Adolf,* 706 S.W.2d 443, 446 (Mo. 1986) (en banc). "The relevant definition of bad faith or malice in this context ordinarily contains a requirement of actual intent to cause injury." *Twiehaus,* 706 S.W.2d at

447. "A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another. An act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others." *Id.* (internal punctuation and quoted case omitted). "Bad faith, although not susceptible of concrete definition, embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." *Id.* (brackets and quoted case omitted). An allegation of "malicious motive or purpose or of conscious wrongdoing" is sufficient under Missouri law to preclude application of the official immunity doctrine. *See Twiehaus,* 706 S.W.2d at 447.

Official immunity "'protects public employees from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary [as opposed to ministerial] acts.'" *K.B. v. Waddle*, 764 F.3d 821, 824 (8th Cir. 2014) (quoting *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. 2008)).

> "Qualified immunity shields government officials from liability and the burdens of litigation in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1155 (8th Cir. 2014) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "To overcome a defendant's claim of qualified immunity, the

burden falls on [plaintiffs] to show: '(1) the facts, viewed in the light most favorable to [plaintiffs], demonstrate the deprivation of a constitutional right; and (2) the right was clearly established at the time of the deprivation.'" *Id*. (quoting *Baribeau v. City of Minneapolis*, 596 F.3d 465, 474 (8th Cir. 2010)).

*Gilmore v. City of Minneapolis*, No. 15-2465, 2016 WL 4758552, at *2 (8th Cir. Sept. 13, 2016).

The court applies the doctrine of qualified immunity in a manner that "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir.2005) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)).

To determine whether a defendant is entitled to qualified immunity, the Court first considers whether the alleged facts demonstrate that his conduct violated a constitutional right and, if so, whether the right claimed was clearly established at the time of the alleged injury. *Howard v. Kan. City Police Dep't*, 570 F.3d 984, 988 (8th Cir.2009). "If the answer to either question is no," then the defendant is entitled to qualified immunity. *Doe v. Flaherty*, 623 F.3d 577, 583 (8th Cir.2010).

> Qualified immunity shields a government official from liability and the burdens of litigation in a § 1983 action for damages unless the official's conduct violated a clearly established constitutional or statutory right of which a reasonable official would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). When a defendant asserts qualified immunity at the summary judgment stage, the plaintiff must

produce evidence sufficient to create a genuine issue of fact regarding whether the defendant violated clearly established law. *Johnson v. Fankell,* 520 U.S. 911, 915, 117 S.Ct. 1800, 138 L.Ed.2d 108 (1997).

*Chambers v. Pennycook*, 641 F.3d 898, 904 (8th Cir. 2011).

It appears Plaintiff claims he was denied due process during his involuntary commitment because his petitions for conditional release were not granted. Defendants, however, responded to Plaintiff's petitions and even filed their own application for conditional release without discharge. Plaintiff fails to establish that the process afforded him during his involuntary commitment was not proper nor what he believes was improper, other than he should not have been committed. Although he claims Defendants improperly placed the burden on him to demonstrate by clear and convincing evidence that he was not mentally ill or dangerous. There is no support anywhere in the record that these Defendants took the claimed action requiring Plaintiff's production. Indeed, Defendants actually supported Plaintiff's discharge. Plaintiff does not dispute this nor does he provide any evidence that Defendants took any action to hinder his release in any way.

Furthermore, although Plaintiff claims Defendants failed to intervene during the "constitutional violations," Plaintiff has not presented any evidence to establish that a constitutional violation occurred. As such, Defendants are entitled to qualified immunity. *Gilmore*, No. 15-2465, 2016 WL 4758552, at *2; *Chambers,* 641 F.3d at 904.

Likewise, Plaintiff has produced no evidence of a conspiracy of any kind. "To prove a civil conspiracy under § 1983, [a plaintiff] must show (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action to be taken; (4) the commission of one or more unlawful overt acts; and (5) damages as the proximate result of the conspiracy." *Dean v. Cty. of Gage, Neb.*, 807 F.3d 931, 939 (8th Cir. 2015), cert. denied sub nom. *Gage Cty., Neb. v. Dean*, No. 15-1278, 2016 WL 1545463 (U.S. June 20, 2016) (internal quotation marks omitted) (quoting *Livers v. Schenck*, 700 F.3d 340, 360-61 (8th Cir. 2012)). "To be liable as a conspirator [one] must be a voluntary participant in a common venture. ... It is enough if [Defendants] understand the general objectives of the scheme, accept them, and agree, either explicitly or implicitly, to do [their] part to further them." *Id*. (internal quotation marks and citations omitted). "The plaintiff is additionally required to prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim." *White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008) (citations omitted). "[A] claim of civil conspiracy is not an independent cause of action, and can only be sustained after an underlying tort claim has been established." *Holmes v. Slay*, No. 4:12CV2333, 2015 WL 1349598, at *7 (E.D. Mo. Mar. 25, 2015) (citing *Hanten v. School Dist. of Riverview Gardens*, 183 F.3d 799, 809 (8th Cir. 1999)). Since

there has been no showing of a constitutional violation, Plaintiff's conspiracy claim necessarily fails.

Furthermore, Plaintiff cannot establish supervisory liability of Defendants.

> Government officials are personally liable only for their own misconduct. *Parrish v. Ball,* 594 F.3d 993, 1001 (8th Cir.2010), citing *Otey v. Marshall,* 121 F.3d 1150, 1155 (8th Cir.1997). Thus, "[t]he doctrine of qualified immunity requires an *individualized* analysis of *each* officer's alleged conduct." *Walton,* 752 F.3d at 1125 (quotation omitted). When a supervising official who had no direct participation in an alleged constitutional violation is sued for failure to train or supervise the offending actor, the supervisor is entitled to qualified immunity unless plaintiff proves that the supervisor (1) received notice of a pattern of unconstitutional acts committed by a subordinate, and (2) was deliberately indifferent to or authorized those acts. *Livers v. Schenck,* 700 F.3d 340, 355 (8th Cir.2012).
>
> > (1) This rigorous standard requires proof that the supervisor had notice of a pattern of conduct by the subordinate that violated a clearly established constitutional right. Allegations of generalized notice are insufficient. "To impose supervisory liability, other misconduct must be very similar to the conduct giving rise to liability." *Id.* at 356.

*S.M. v. Krigbaum,* 808 F.3d 335, 340 (8th Cir. 2015). The record is completely devoid of any notice on the part of Defendants of an unconstitutional violation. Plaintiff's belief that he should have been released earlier than he was does not rise to the level of a constitutional violation by these Defendants.

## Conclusion

Based upon the foregoing analysis, Defendants are entitled to judgment as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment, [Doc. No. 65], is **GRANTED**.

A separate judgment in accordance with this Opinion, Memorandum and Order is entered this same date.

Dated this 30th day of September, 2016.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE